Matthew M. Levy, J.
The present proceeding had its genesis in the notorious “ Apalachin Meeting ” of November 14, 1957, held at the home of Joseph Barbara, Sr., in Apalachin, Tioga County, New York. (See Matter of Barbara, Sr., 14 Misc 2d 223, affd. 7 A D 2d 340; People ex rel. Valenti v. McCloskey, 8 A D 2d 74, affd. 6 N Y 2d 390, appeal dismissed, 361 U. S. 534; Matter of Commission of Investigation of State of N. Y. v. Castellano, 5 N Y 2d 1026, appeal dismissed 361 U. S. 7; Matter of Commission of Investigation of State of N. Y. v. Mancuso, 5 N Y 2d 1026, appeal dismissed and cert. denied 361 U. S. 10; Matter of Commission of Investigation of State of N. Y. v. Lombardozzi, 7 A D 2d 48, affd. 5 N Y 2d 1026; United States v. Bufalino, 285 F. 2d 408; United States v. Bonanno, 178 F. Supp. 62; United States v. Bonanno, 180 F. Supp. 71).
*730 The State Commission of Investigation undertook, an inquiry into that affair. In the course thereof one Joseph Falcone was personally served with a subpoena, issued by the commission, directing him to appear before it at a specified hour and at a specified courtroom in New York City, there to testify at a public hearing. Falcone failed to appear at the time and place directed in the subpoena, and no one came forward to appear in his behalf or excuse his absence.
On September 18, 1958, upon application of the commission, as petitioner, an ex parte order was granted by this court, directing Falcone, as respondent, to show cause why a warrant of attachment should not issue to the sheriff commanding that official to apprehend the respondent and bring him before the commission. The order to show cause permitted substituted service thereof upon the respondent. The state police, after due and abortive effort to effectuate personal service, and ascertaining that no one was at the respondent’s home in Utica, New York, served the order to show cause, together with the papers upon which it was based, upon the respondent in the manner provided in the order — by registered mail addressed to the respondent at his residence and by affixing the papers to the outer door thereof (see Civ. Prac. Act, § 231). On September 26, 1958, the return date of the order to show cause, no one appeared in opposition to the application, and it was granted on default. A warrant was, on said day, ordered to be issued, and it was so issued on that date by the Justice presiding, commanding the sheriff to apprehend the respondent and “ bring him forthwith before the said Commission ” at its office in New York City, there “ to be examined and testify ”.
From that time to this, all efforts to execute the warrant have been fruitless. Appearing specially, the respondent now moves before me to vacate the order of September 26,1958, and the warrant of attachment of that date, on the ground that the court was without jurisdiction to make the order or issue the warrant. The foundation of the application is that the respondent was not personally served with the order to show cause of September 18, 1958, and the motion papers upon which it was based. While an expression or two dehors the record were indulged in by counsel in their submission, it is recognized that the issue is to be determined solely on the basis of the record itself.
Subdivision 1 of section 406 of the Civil Practice Act, so far as relevant here, reads as follows: “1. When a judge, or an arbitrator, referee or other person, or a board or committee, has been heretofore or is hereafter expressly authorized by law *731 to hear, try or determine a matter, or to do any other act in an official capacity, in relation to which proof may be taken, or the attendance of a person as a Avitness may be required; or to require a person to attend * * * to give testimony, or to have his deposition taken, or to be examined; a subpoena may be issued by and under the hand of the judge, arbitrator, referee or other person, or the chairman or a majority of the board or committee, requiring the person to attend ”.
I hold that subdivision 1 of section 406 includes the present petitioner — although it is officially designated as a “ Commission ’ ’, and not as “ a board or committee ’ ’ — and that the subpoena was duly issued and duly made returnable for the time and place therein specified. The State Commission of Investigation has the function, poAver and duty, among others, to 16 conduct investigations * * * in connection with [a]ny matter concerning the public peace, public safety and public justice “ [t]he conduct of public officers and public employees ” and “ [t]he faithful execution and effiective enforcement of the laws of the state, with particular reference but not limited to organized crime and racketeering ’ It is authorized to “ conduct private and public hearings ” and to “ subpoena witnesses, compel their attendance [and to] examine them under oath ”. It may “ designate one or more members of the commission or its staff to preside over any such hearings ” and “ to exercise any such poAvers ” (L. 1958, ch. 989, § 2, subds. 2, 11).
I find — indeed, it is not disputed — that the commission duly proceeded in accordance with the statute, and that the subpoena Avas duly issued by it, duly made returnable for the time and place therein specified and duly served upon the respondent accordingly. The fundamental problem before me, then, is .at once single and singular — single in the sense that the only basic question is whether the Avarrant should be vacated since it was expressly based upon an order which was procured by default and the initiating order to shoA\r cause (upon which the final order itself Avas expressly grounded) Avas not personally served; and singular in the sense that the precise question does not appear to haAm been the subject of any prior determination.
The respondent relies heavily upon Matter of Barnes (Bayne) (204 N. Y. 108). In that case, the statute involved provided that, if a person ‘ ‘ subpoenaed and attending or brought * * * before an officer or other person or a body refuses without reasonable cause to be examined, or to answer a legal and pertinent question, or to produce a book or paper which he was directed to bring by the terms of the subpoena, [then the court or judge] may upon proof by affidavit of the facts by warrant commit the *732 offender to jail, there to remain, until he submits to do the act which he was so required to do, or is discharged according to law ” (Code Civil Pro., § 856 [now Civ. Prac. Act, § 406, subd. 3]). The court held, in Barnes, that this section may be so construed as to require notice to one charged with contempt and that when read with the provisions of the Judiciary Law relating to criminal contempts its provisions were constitutional and valid. The respondent argues that if notice of the application for the issuance of the warrant is required to validate the Barnes statute, notice is similarly required to render the statute involved in the instant case constitutional.
The statute here applicable, as I have earlier noted, is subdivision 2 of section 406 of the Civil Practice Act. It prescribes the procedure for the enforcement of the subpoena issued by the commission (or committee). In addition to the application to punish for contempt and other remedies which may be invoked, the statute provides, among other things, that a court of record or a Judge thereof, “ upon proof by affidavit of the failure [of the subpoenaed witness] to attend, must issue a warrant to the sheriff of the county commanding him to apprehend the defaulting witness and bring him before the officer, person or body before whom or which his attendance was required ”.
In Matter of Union Bank of Brooklyn (147 App. Div. 593, reversed upon another ground, 204 N. Y. 313), one of the issues was whether section 855 of the Code of Civil Procedure (the predecessor to subdivision 2 of section 406 of the Civil Practice Act) was unconstitutional, as a deprivation of liberty without due process of law under the State Constitution, for the reason that the statute does not require notice to be given to the person named in the warrant before the issuance thereof, and that notice had not, in fact, been given to the witness there subpoenaed. The court held (p. 600) that the “ provision authorizing the issuing of a warrant to compel the appearance of a witness duly subpoenaed before the officer issuing such subpoena is valid,” The rationale of the decision of the Appellate Division on the point here involved, as expressed by the court (ppy 599-600), is the “ distinction between the temporary restraint ■ necessary to bring a party before one authorized to conduct an examination and the restraint, which follows a final adjudication upon luis rights.” The court pointed out (p. 599) that, under the provisions of the statute, t( no one assumes to finally deter- ' mine the rights of the person subpoenaed, nor to provide punishment for his disobedience thereof. The statute does not authorize Ms commitment to any place of confinement, nor any further interference with his liberty than the temporary *733 restraint necessary to compel Ms production before the person authorized to require his attendance. * * * The issuing of a summary attachment without notice to compel the attendance of a witness who has disobeyed a subpoena has long been exercised, and the right to do so seems not to have been questioned ”,
I recognize, of course, that the right is questioned now. But I am not impressed with the merits of the respondent’s contention. When he chose to ignore the subpoena, the commission, pursuant to subdivision 2 of section 406, took the proper steps to enforce the fulfillment of the respondent’s duty to attend. Under that subsection, as I have said, there is no express requirement that notice be given to the subpoenaed witness who has failed to appear, before the court may issue a warrant to compel his attendance. That statute permits — indeed, requires — the court, upon application, forthwith to issue the warrant of attachment of the person of the witness who has defaulted in appearance.
In my view, refusal of a witness to testify after attendance is one tiling; failure to attend at all, in disobedience of the compulsion of the subpoena, is another. In People ex rel. Hastings v. Hofstadter (258 N. Y. 425), Chief Judge Cabdozo, speaking for a unanimous court when outlining the “ proper procedure ” for the issuance and execution of a warrant in the second instance, did not indicate that notice to the defáulting subpoenaed witness was a condition precedent (p. 436). I deem it both statutorily inappropriate and constitutionally unnecessary to read into that statute — which permits summary enforcement of the directive to appear — the requirement of antecedent notice. The argument that the legislation is invalid and unconstitutional without such provision is, in my opinion, without merit.
If, as in Matter of Barnes (Bayne) (204 N. Y. 108, supra), the present petitioner were seeking to punish the respondent for Ms failure to attend, rather than to compel his attendance, I would say that notice of the motion to punish for the contempt would be a requisite to the issuance of the mandate of the court. Punishment can await notice; compulsory attendance need not. Jurisdiction to enforce the subpoena did not vanish because the witness chose to. If, in addition to the personal service of a subpoena, it were required that a defaulting witness be again notified before he could be compelled to attend, the due processes of judicial trials, of legislative hearings and of constitutional and statutory committee investigations would be paralyzed to such an extent that they might be rendered completely futile. *734 I can find no precedent, no statute, no constitutional provision or interpretation, that justifies such interference with the historic functions of government. As so pungently observed by the late Chief Justice Vrasorr, a “ subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity” (United States v. Bryan, 339 U. S. 323, 331).
It appears, however, that, in the case at bar, the commission — out of a spirit of fairness or an abundance of caution — instead of seeking the issuance of a warrant forthwith for the apprehension of the respondent for failing to attend, applied for an order directing the respondent to show cause why a warrant of attachment should not issue to a sheriff, commanding him to apprehend the respondent and bring him before the commission. The order provided for substituted service thereof and the papers upon which it was granted. Compliance there was with the terms of the order, but, it is urged, personal service was necessary. I do not agree.
Since, as I have held, no notice whatsoever was required to be given to the respondent before the issuance of the warrant, it follows — as I see it — that the giving of notice by substituted service when the respondent could not be personally found suffices. As a consequence, it is unnecessary for me to pass upon the substance of the question as to whether the final order entered upon the order to show cause should or should not be vacated — and therefore I need not determine, as was argued pro and con before me, whether it was the service of the subpoena or the service of the order to show cause that was the commencement of the proceeding. (Cf. Matter of Katz [Burkin], 1 Misc 2d 67, 70.) I hold that the recitals in the warrant as to che granting of the order to show cause and the issuance of the order are surplusage and as such do not affect the mandatory portions of the warrant — so long as it was issued, as here, “ upon proof by affidavit of the failure [of the respondent] to attend” notwithstanding that he was duly subpoenaed (Civ. Prac. Act, § 406, subd 2). The fact that such affidavit was annexed to the order to show cause does not detract from its legal efficacy in support of the warrant.
The respondent argues that, when he is apprehended upon execution of the warrant, he may be kept in durance vile forever and anon, and that, therefore, the warrant — having been issued without advance personal notice to him — is invalid and should *735 be vacated. That is both an unlikely hypothesis and a non sequitur. The subpoena served upon the respondent was the first step to compel such attendance and such testimony. When the respondent ignored the subpoena, the commission took the next step, namely, obtaining a warrant of attachment. The warrant directs the apprehension of the respondent for purposes of his appearance before the commission — a proper way to enforce compliance with the subpoena. If the warrant is executed, and the respondent is brought before the commission, it is expected that the respondent’s testimony will be taken promptly. If that is not done, and the respondent is present, the court is available to protect the respondent from oppression (cf. People ex rel. Valenti v. McCloskey, 6 N Y 2d 390, 404-405, appeal dismissed 361 U. S. 534, supra), just as the court should (and is now seeking to) protect the commission as an arm of the State from premature withering because of the deliberate absence of the respondent despite the due service upon him of the subpoena. It cannot be assumed that the purpose of the commission is, without court order, to punish the respondent by using the guise of a court warrant requiring attendance. ‘ ‘ Whether imprisonment [for willful contempt] will become necessary hereafter, the sequel will decide” (People ex rel. Hastings v. Hofstadter, 258 N. Y. 425, 436, supra).
The motion to vacate the warrant is denied. This renders academic the application to vacate the order, and it, too, is therefore denied.